UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                              :
In re:  DIRECT ACCESS GROUP, LLC,             :
                                              :  Case No. 13-11780 (ALG)
                                              :  Chapter 11
                         Debtor               :
------------------------------------------------------------------x

### DECISION AND ORDER DENYING WITHOUT PREJUDICE MOTION FOR LEAVE TO FILE A LATE PROOF OF CLAIM

This is a motion to file a late proof of claim in the Debtor's chapter 11 case brought by Banco de Desarrollo Economico y Social de Venezuela ("Claimant"), a Venezuelan state-owned bank. For the reasons stated below, the motion is denied, without prejudice.

### FACTS

Direct Access Group, LLC ("Debtor") is a holding company whose primary asset was a 99%-owned subsidiary, Direct Access Partners, LLC ("DAP"). DAP's Global Markets Group, an internal division of DAP, was engaged in executing fixed income trades for customers in foreign sovereign debt (Motion for Leave to File of Proof of Claim and Memorandum of Support, Ex. B).[1] Claimant was a client of DAP.

It is undisputed that, between January 2009 and June 2010, at least one of the Claimant's senior officials, together with certain of DAP's former employees, engaged in a fraudulent kickback scheme pursuant to which the Claimant's senior official would steer business to DAP in exchange for a commission. This scheme resulted in the arrest of the individuals involved on or about May 3, 2013, and their subsequent charge with violations of various federal laws. Certain of DAP's employees pled guilty to criminal charges, while the Claimant's senior official

---

[1] Ex. B is an Amended SEC Complaint seeking to enjoin DAP and its principal officers from violating the securities laws by participating in the scheme detailed below.

pled guilty, among other things, to conspiracy to commit money laundering and violation of the Travel Act. (Motion for Leave to File Proof of Claim and Memorandum of Law in Support, Ex. E). As the record shows, the uncovering of this kickback scheme received wide publicity and news coverage. When the scheme was uncovered, Goldman Sachs, DAP's primary clearing firm, stopped clearing trades for DAP. As a result, DAP was deprived of its ability to conduct sales and trading operations and effectively went out of business.

On or about May 30, 2013, an involuntary bankruptcy proceeding was filed under chapter 7 against the Debtor, DAP's parent-company, and a few months later, on or about July 22, 2013, the Debtor converted the filing to a voluntary petition under Chapter 11. On November 12, 2013, the Court entered an order setting the deadline for filing proofs of claim as December 20, 2013 ("Bar Date").[2] The Debtor notified known creditors of the Bar Date by mail, and published the same in the Wall Street Journal on or about November 20, 2013 (Debtor's Objection to BANDES Motion for Leave to File a Proof of Claim, Ex.F).

On October 29, 2014, 10 months after the Bar Date, the Claimant moved for leave to file a late proof of claim. The Claimant argues that its failure to timely file a proof of claim is the result of "excusable neglect" because it did not receive actual notice of the Bar Date, and that it was entitled to such notice as a "known" creditor. The Claimant further argues that even if the Court finds it to be an "unknown" creditor, publication of the Bar Date in the Wall Street Journal was insufficient to provide it with constructive notice.

## **DISCUSSION**

Under Fed. R. Bankr. P. 9006(b)(1), the Court may allow the late filing of a proof of claim if the late filing was the result of "excusable neglect." The Supreme Court has held that a determination of "excusable neglect" is "an equitable one, taking account of all relevant

---

[2] January 20, 2014 was set as the governmental bar date.

2

circumstances surrounding the party's omission," such as "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Services Co. v. Brunswick Associated Ltd. Partnership*, 507 U.S. 380, 395 (1993). The burden of proving "excusable neglect" rests on the movant, and the Second Circuit has held that "a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *See In re Midland Cogeneration Venture Ltd P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 123 (2d Cir. 2005) (internal citations omitted).

Claimant asserts that it meets the "excusable neglect" test because it was a "known" creditor of the Debtor as the "victim" of the bribery scheme that brought down DAP and, in short order, the Debtor. It argues that as a known creditor, it should have been given actual notice of the Bar Date. *Mullane v. Cent. Hanover Bankr & Trust Co.*, 339 U.S. 306 (1950). "Known" creditors are those known or "reasonably ascertainable by the debtor." *Tulsa Prof'l Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988). A creditor is "reasonably ascertainable" if that creditor can be identified with "due diligence," without resorting to "impracticable and extended searches." *Mullane v. Cent. Hanover*, 339 U.S., at 317.

For "unknown" creditors, including creditors whose claims are "speculative or conjectural," constructive notice of the Bar Date, including notice through publication, suffices. *In re Drexel Burnham Lambert Group Inc.* 151 B.R. 674, 680 (Bankr. S.D.N.Y. 1993) (internal citations omitted). Claimant nevertheless argues that even if it is deemed to be an "unknown" creditor, publication of the Bar Date in the *Wall Street Journal* could not provide sufficient constructive notice, as it did not meet due process standards. In particular, Claimant argues that the notice lacked "required identifiable information," did not contain any reference to the

3

subsidiary DAP, and was published in an American newspaper of national circulation that did not reach Claimant in Venezuela.

The Debtor responds that Claimant is not even a creditor. As the beneficiary of a fraudulent kickback scheme, the Debtor argues, *citing Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 938 N.E.2d 941, 912 N.Y.S.2d 508 (2010), Claimant is *in pari delicto* with the wrongdoers. Debtor's Objection, at 13. Even if Claimant were a creditor, the Debtor continues, it was not a known creditor, as a debtor does not have a "duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it." *Id*. at 12, *quoting In re Brooks Fashion Stores, Inc*, 124 B.R. 436, 445 (Bankr. S.D.N.Y. 1991).

DISCUSSION

Claimant's motion raises a number of interesting legal issues, such as whether an entity whose officer participates in an unlawful bribery scheme can claim to be a victim of the scheme or whether it should be deemed, among other things, a co-conspirator liable for the damages caused by the scheme. If the latter, the Debtor might welcome Claimant's appearance in the case, provided that it made itself responsible for the damages caused.

Nevertheless, the Debtor has objected to the proof of claim on grounds of *in pari delicto* and a number of other grounds, none of which need to be reached at this time and on this motion. At the present stage, Claimant has made no showing whatsoever that it has a claim against the Debtor and has equally failed to make an adequate showing of excusable neglect for its 10-month delay in filing a purported claim.

First, and most basically, Claimant simply assumes that it has a claim against the Debtor when it asserts that it has a claim against the Debtor's defunct subsidiary, DAP. No basis

4

whatsoever is shown for ignoring the corporate structure or assuming that the Debtor is liable for all of its subsidiary's debts.

Second, Claimant asserts that it did not receive notice by mail of the Debtor's bar date and assumes that this was the cause of its lengthy delay in asserting a claim against the Debtor (if it had one). However, it supports its assertions merely by attaching public documents relating to the scheme, such as an Amended SEC Complaint. It has not bothered to attach admissible evidence as to its knowledge of the scheme, or of the failure of DAP or when it learned that DAP's holding company had failed and was in a bankruptcy proceeding in New York.

In *DPWN Holdings (USA) Inc. v. United Air Lines*, 747 F.3d 145 (2d Cir. 2014), the Second Circuit recently set forth the showing that a party must make in order to obtain the right to pursue a claim that otherwise would be barred by virtue of a debtor's bankruptcy. The claimant sought to pursue a claim against United for an alleged price-fixing conspiracy. On the facts of that case, the Circuit Court refused to accept the claimant's general assertions of lack of knowledge. The Court held that, when reconsidering the issue on remand, "the District Court must determine what aspects of United's alleged price-fixing conduct were known by DHL [the claimant], or reasonably ascertainable . . . . If DHL lacked such knowledge, the inquiry will then shift to whether United knew or should have known of its potential antitrust liability such that due process required it to notify DHL of the potential claim." 747 F.3d at 153.

Although the United-DHL dispute arose post-confirmation in a plenary proceeding in the District Court, the Circuit Court's analysis is applicable here. As a first step, Claimant must make a showing as to its knowledge of the failure of DAP and the Debtor and the Debtor's bankruptcy case. Under the circumstances of this case, it must also demonstrate that it has a claim against the Debtor, as opposed to its asserted claim against DAP. Whether discovery or an

5

evidentiary hearing will be required is left to further consideration. Once Claimant has made the initial showing required by *DPWN Holdings*, the question will be what the Debtor knew or should have known of Claimant's potential claim. The Debtor disputes that Claimant is a creditor, much less a known or knowable creditor, but this issue need not be reached until Claimant has made the showings required of it.

Finally, Claimant asserts that an SEC proof of claim filed after the Bar Date but before the Governmental Bar Date constituted an "informal proof of claim" that it can rely on. Whatever the parameters of the informal proof of claim doctrine, even the cases cited by Claimant show that it has only been used to permit a party to rely on its own filings, not another entity's claim, as an "informal proof of claim." *See Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.)*, 190 B.R. 185, 187 (Bankr. S.D.N.Y. 1995); *In re Rockville Orthopedic Assocs.*, 365 B.R. 366 (Bankr. D. Conn. 2007). The SEC did not purport to file a class proof of claim and its brief filing did not bring into this case every conceivable plaintiff who might have a claim related to that purportedly asserted by the SEC. Any rule to the contrary would simply eliminate the principle that bar dates are essential to the administration of Chapter 11 cases so that debtors can identify and deal with the claims against them. *See First Fidelity Bank, N.A. v. Hooker Inv., Inc. (In re Hooker Inv., Inc.)*, 937 F.2d 833, 839-840 (2d Cir. 1991).

## CONCLUSION

Claimant's motion for leave to file a late proof of claim is denied on the present record, without prejudice to the filing of an amended motion.

**IT IS SO ORDERED.**

Dated: New York, New York
      January 6, 2015

                                      **s/Allan L. Gropper**
                                      UNITED STATES BANKRUPTCY JUDGE